UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES LYONS,                           )
                                         )
                    *Plaintiff,*         )
                                         )
          v.                             )        CAUSE NO. 3:21-CV-477 RLM-MGG
                                         )
WILLIAM HYATTE and                       )
GEORGE PAYNE, JR.,                       )
                                         )
                    *Defendants*         )

OPINION AND ORDER

Charles Lyons has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Lyons sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Lyons has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Lyons requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 15], GRANTS Mr. Lyons's

motion for summary judgment, [Doc. 29], and DENIES AS MOOT Mr. Lyons's request for oral argument. [Doc. 29].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court considering cross-motions for summary judgment "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A nonmovant can't merely allege a factual dispute; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1]    Mr. Lyons's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 13], and he requests consolidated oral argument. [Doc. 42]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Charles Lyons alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility from May 2 to June 17, 2021. He alleges that his cell had broken glass, intermittent lighting, and a window covered with sheet metal. The sheet metal blocked light but wasn't fully sealed, so the cell got cold, wet, and filled with bugs. He claims several injuries, both physical and psychological. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Lyons sued from prison, so the defendants aren't liable if they can show that Mr. Lyons didn't exhaust administrative remedies available to him. See 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if

there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Lyons used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Lyons didn't exhaust the grievance process. Their evidence includes the Indiana Department

of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 15-2], Mr. Lyons's grievance history, [Doc. 15-3], a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility, [Doc. 15-1], and copies of two of Mr. Lyons's grievances, unrelated to his cell condition. [Doc. 15-4, -5].

Mr. Gapski reviewed documents relating to Mr. Lyons's grievance history and attests to the grievance policy just described. He then attests to Mr. Lyons's documented grievance history. He says the grievance specialists received two grievances from Mr. Lyons between May 25, 2020, and the date of the complaint, July 1, 2021. Neither involved the condition of his cell; the first involved an alleged sexual threat and the second alleged an issue with personal property. Neither was appealed. The defendants' copy of Mr. Lyons's grievance history and two grievances support Mr. Gapski's account.

*Mr. Lyons's Account*

Mr. Lyons asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration with a letter from the law library[2] and request for interview attached, [27-7 at 48–52], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist at Miami Correctional Facility who also served as Rule 30(b)(6) representative for the prison, [Doc. 27-1], the deposition transcript of Charlene A. Burkett, the

---

[2]     The parties dispute whether the letter is fraudulent. The court addresses this dispute later.

Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 27-2 to 27-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 27-6].

According to Mr. Lyons's declaration, he was kept in restrictive housing from May 2 to June 17, 2021. He claims to have filed ten to fifteen grievances about his cell conditions while there. He gave grievances to Officer Pine, Officer Parker, and Counselor Isaacs, and might have given one to Lieutenant Carty. He had to rely on prison staff to deliver his grievances because he was confined to his cell most of the time. He claims specifically that he gave two grievances about his covered window and intermittent electricity to Counselor Isaacs.

Mr. Lyons never received a response to a grievance. He asked Counselor Isaacs and correctional officers what he should do, and they said all he could do was wait for a response. He was never told he could appeal a non-response. Prison staff did tell him he had to use Department of Correction forms to file grievances or appeals.

Attached to the declaration is a request for interview form addressed to Counselor Isaac. The form complains about missing grievances. Mr. Lyons says in the form that he gave Counselor Isaac two grievances about his cell condition. The form is signed at the bottom and Mr. Lyons says this shows that Counselor Isaacs admitted that he received the grievances. He also attaches a letter that purports to be from the law library. The letter is addressed to Mr. Lyons, say that the library "is well aware of the fact that the grievance officer is not processing

7

grievances," and advises Mr. Lyons that he can write to central office or Warden Payne. [Doc. 33-7 at 52].

Mr. Lyons presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Lyons's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Gapski also described how Miami Correctional Facility handles appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 15-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, explaining an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 27-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Gapski also spoke of how timing is calculated. The grievance policy requires that a prisoner "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident given rise to the complaint." [Doc. 15-2 at 9]. The same is true for appeals, except that a prisoner has five business days instead of ten. [Doc. 15-2 at 14]. Mr. Gapski attested that grievance specialists calculate timing based on when they receive an appeal. So an appeal is deemed untimely if not *received* within five business days. Timing doesn't depend on when a prisoner signed an appeal or

handed an appeal to a correctional officer, even though prisoners often can't give an appeal directly to a grievance specialist.[3]

Mr. Lyons presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

## DISCUSSION

Mr. Lyons and the defendants move for summary judgment on the exhaustion defense. The governing law is thoroughly set out in the court's opinion and order on cross-motions for summary in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, which discussion the court adopts by reference.

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require two levels of appeal for

---

[3]   The defendants contend that Mr. Gapski's testimony about timing was only about appeals and not first-level grievances, so Mr. Gapski's testimony can't be used to generalize about how first-level appeals are handled. [Doc. 35 at 11].

administrative remedies to be exhausted. Their records don't show that Mr. Lyons successfully filed a grievance or appealed any grievance about his cell's conditions, so he must not have exhausted administrative remedies.

Mr. Lyons's argument is similarly straightforward: the prison didn't respond to grievances and didn't have a process to appeal non-responses, so administrative remedies weren't available.

Approaching from Mr. Lyons's perspective makes for a clearer picture.

Mr. Lyons points to his actions and Miami Correctional Facility's inaction and silence to show that he exhausted available remedies. His declaration says he submitted ten to fifteen grievances bout his cell's condition. He gave them to three or four specific prison officials. Mr. Lyons specifies that he gave two about the covered window and intermittent electrical lighting to Counselor Isaacs. No grievance received a response. Counselor Isaacs told Mr. Lyons that he just had to wait, while various prison officials told Mr. Lyons that he had to use a Department of Correction form to appeal.

According to Mr. Lyons, this evidence shows that administrative remedies weren't available because the prison didn't respond to his grievances or appeals. He says that prison officials' consistent failure to respond meant that the process wasn't available. *See* Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002).

This argument appears to hit a snag with the grievance policy. A prisoner must follow any prison rules that require administrative appeals, id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)), and Miami Correctional Facility's

policy required notifying grievance specialists of non-responses and also required that prisoners appeal non-responses.

According to policy, a grievance specialist is to send the prisoner an "unacceptable form" rejecting a grievance or a notice of receipt of an accepted grievance within ten business days of receipt. If the prisoner doesn't receive either within ten business days of submitting it, the prisoner is to notify the grievance specialist of the non-response and retain a copy of the prisoner's own notice to the grievance specialist. The grievance specialist is to respond to that notice within ten business days. The policy then also required that a grievance specialist respond to a grievance within fifteen business days of receipt. If a prisoner didn't receive a response within twenty business days of when the grievance specialists received a grievance, a prisoner was to appeal as if a response had come. The warden was to respond to an appeal within ten business days of receiving the appeal. If he didn't respond by then, a prisoner could appeal as if a response had come. Under these rules, Mr. Lyons would exhaust administrative remedies only if he appealed the lack of a response to a grievance and appealed the lack of a response to his appeal.

This appeals process makes little sense. The part of the policy requiring that a prisoner file a notice of non-response says that the prisoner must do so if ten business days have passed since submitting a grievance. It doesn't give a deadline by which the prisoner must notify the grievance specialist, suggesting that the step isn't mandatory. Nor does the policy define when a grievance is "submitted." Most deadlines in the grievance policy are based on when a prison

12

official receives a grievance or appeal. It's unclear if a grievance is submitted when the grievance is received, which the prisoner would have no way of knowing, or when the prisoner signed the grievance, hands it to a prison official, or puts it in an outbox, which the policy doesn't address. The policy doesn't say how to provide this notice and the prison don't have a form for this purpose; Mr. Gapski testified that there's not a standard form and prisoners can "write on anything." [Doc. 27-1 at 33].

This step's necessity is further obscured by its relation to the first-level appeal. First, the policy at one point says a prisoner "shall" notify the grievance specialist of a non-response, [Doc. 15-2 at 9], while saying at another point that the only recognized process includes: (1) a formal attempt to resolve concerns; (2) a written appeal to the warden; and (3) a written appeal to the department grievance manager. [Doc. 15-2 at 3]. Second, the policy says a prisoner can appeal a non-response as if there'd been a response if twenty business days have passed from the grievance specialist's receipt of the grievance. The policy doesn't say that the prisoner can appeal only once he's filed a notice of non-response or once a grievance specialist has responded to a notice of non-response. This part of the policy is opaque and incapable of use for non-responses.

Appealing non-responses is likewise confusing. The prisoner can notify the grievance specialist of a non-response after ten days of submitting it, but a prisoner can file an appeal only by filing State Form 45473. Mr. Gapski describes an unauthorized step requiring a prisoner to first mark another form with

"disagree" before receiving State Form 45473. But a prisoner can't mark "disagree" on a form he never receives. This is a dead end.

The defendants insist that Miami Correctional Facility recognizes only the official policy, contrary to what Mr. Gapski says. But even if the prison follows the written policy to a tee, appeals are unavailable for non-responses. The policy tells prisoners to appeal as if the grievance had been denied but doesn't say how a prisoner is to get a copy of State Form 45473,[4] much less how a prisoner in restrictive housing, like Mr. Lyons was, is to get ahold of State Form 45473.

The same deficiencies apply to the second-level appeal. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on a form that they don't have and that might not even exist.

Mr. Lyons bolsters his case with prison officials' misinformation. Counselor Isaacs and other told Mr. Lyons he could do nothing but wait for a response and that he had to use Department of Correction forms to file a grievance or to appeal. According to Mr. Lyons, show that prison staff prevented him from using the administrative process. *See* Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the

---

[4]     Mr. Lyons asserts that the only way a prisoner gets State Form 45473 is to receive one from a grievance specialist after completing the unofficial and unauthorized step. The defendants object to this assertion as not supported by Mr. Gapski's testimony — he said that State Form 45473 comes from him but didn't exactly say that there was no other way to get the form. [Doc. 27-1 at 47]. Still, the defendants never explain how a prisoner who doesn't receive a response can get State Form 45473, nor does the written policy address this crucial step.

administrative process . . . the process that exists on paper becomes unavailable in reality.").

If Mr. Lyons is believed, he has exhausted *available* remedies. Mr. Lyons could have notified the grievance specialist of the non-response, but the policy lacks detail of how or when to do this and doesn't say that this is a prerequisite to the mandatory appeal of a non-response. Mr. Lyons could appeal the prison's lack of response after the prison's time to respond lapsed, but that appeal was made impossible because Miami Correctional Facility required State Form 45473 to appeal. It provided State Form 45473 form only after a prisoner completed the unauthorized intermediate step involving the Offender Grievance Response Report. If the defendants are right and they followed the policy word for word, they still don't explain gaps in the policy that don't account for non-responses. Nothing in the written grievance policy tells a prisoner how to appeal if he never receives a response or State Form 45473. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Lyons "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).[5]

---

[5]     Another gap in the policy involves timing. Mr. Lyons had to appeal a non-response within twenty business days of when grievances specialists received a grievance or ten business days of when the warden received an appeal. Timing didn't depend on when Mr. Lyons signed or sent a grievance or appeal, and he had no way of knowing when someone else received his grievance or appeal. A

The defendants try to undermine Mr. Lyons's evidence.

First, the defendants claim that the law library letter attached to Mr. Lyons's declaration is fraudulent. The letter has letterhead with "Phrase Two Law Library" and Ms. Hall's name on it but isn't signed by anyone. Counsel for Mr. Lyons asked Ms. Hall in her deposition if it she wrote the letter and if the letterhead was hers. She replied, "no," to both. She later said that prisoners who worked at the law library weren't allowed to write letters on behalf the law library. The defendants suggest this must be an attempt to defraud the court, unless Mr. Lyons has an explanation for the letter's source.

Mr. Lyons acknowledged Ms. Hall's testimony when he cited the letter in his opening brief, saying that it came from the library and that Ms. Hall denied writing it. [Doc. 31 at 10, n.3]. In reply, Mr. Lyons points out that he only represented that he received the letter and never represented who wrote it. He concludes that Ms. Hall's testimony raises questions about who sent it, but doesn't show that Mr. Lyons and counsel sought to perpetrate fraud on the court.

The court overrules any objection to the letter because the parties' arguments don't depend on it. The defendants' observations raise questions and the record could support fraudulent conduct, but it's just as consistent with honest use of the letter.

The defendants then object to purported hearsay statements. Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R.

---

prisoner who doesn't receive a response is apparently left to speculate about when an appeal of a non-response is due.

Evid. 801(c). Inadmissible hearsay can't be used at summary judgment. <u>Carlisle v. Deere & Co.</u>, 576 F.3d 649, 655 (7th Cir. 2009). The defendants say the court should strike certain statements in Mr. Lyons's statement of material facts specifically the statements that: a number of plaintiffs in the consolidated cases asked what they could do about unanswered grievances and were told to wait; that Counselor Isaacs and correctional officers told Mr. Lyons that he could do nothing but wait for a response when a grievance went unanswered; and that prison staff told Mr. Lyons that he had to use Department of Correction forms to file a grievance or appeal.

Mr. Lyons explains that the statements aren't offered for their truth — he isn't trying to prove that prison officials were correct when they said prisoners had to wait for a response to appeal or use Department of Correction forms. Mr. Lyons brought these statements to show that he was given bad information, that is, to show that prison staff interfered with access to administrative remedies. The statements aren't offered for the truth of the matters asserted, so the court overrules the objection and denies any motion to strike.

The defendants then object to Mr. Lyons's use of the Ombudsman's deposition, arguing it's irrelevant. They contend that nothing about the Ombudsman is relevant to whether administrative remedies were available to Mr. Lyons or whether he "complied with the letter of that process." [Doc. 36 at 3]. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. As Mr. Lyons correctly points out, the Ombudsman's testimony would tend to

make it more probable that Mr. Lyons's grievances were two of many that went unanswered. The objection is overruled.

Warden Hyatte and Deputy Warden Payne's reasons to reject Mr. Lyons's evidence and arguments are unpersuasive, so Mr. Lyons has shown exhaustion. Mr. Lyons is entitled to judgment on the affirmative defense unless the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a Pavey hearing. See Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne argue that they're entitled to summary judgment because they have no institutional records of Mr. Lyons's grievances and appeals about housing conditions, and because other plaintiffs successfully exhausted remedies.

First, the defendants argue the grievance process was available because all prisoners receive information about the process at admission and orientation. The policy says all prisoners will be advised about the policy. Mr. Lyons says he was never told about the policy, but the defendants say Mr. Lyons has no evidence that he was never informed of the policy.

This is a red herring. Mr. Lyons's argument depends on whether he was given responses and could appeal those responses in practice. His argument doesn't hinge on whether he was ever told what the policy required on paper. Even if Mr. Lyons knew the policy, the defendants' evidence doesn't contradict Mr. Lyons's claims that his grievances never received responses and his evidence that gaps in the policy (grievances aren't marked until received, the grievance

18

specialists don't know who collects a grievance and when, and the like) allow grievances to go missing. His knowledge of the procedure doesn't show that he failed to exhaust by not appealing, either, when he's shown that appealing non-responses was impossible in practice.

Next, the defendants argue that Jeremy Blanchard, a plaintiff in a consolidated case, Blanchard v. Hyatte, 3:21-CV-160-RLM-MGG, successfully exhausted all prescribed remedies in his case, so Mr. Lyons must have been able to fully exhaust. This argument is unpersuasive because the prison could log and respond to another prisoner's grievances and appeals while still not responding to Mr. Lyons's grievances. Mr. Blanchard's success doesn't controvert Mr. Blanchard's claims that he never received responses to *his* grievances. Plus, Mr. Lyons has shown that appeals were unavailable unless a prisoner received a response. Mr. Blanchard undisputedly received responses, so his successful appeals don't fix the policy's impossible task of appealing a non-response when an appeal requires a form that comes only with a response.

The defendants then cite the policy's requirement that prisoners notify grievance specialists of non-responses. They argue they're entitled to summary judgment because Mr. Lyons didn't inform the grievance specialists of the lack of any response, contrary to policy. Defendants in another case in this district, Eslick v. Davis, successfully argued that the plaintiff didn't exhaust administrative remedies in an Indiana prison because he didn't complete the step of telling the grievance specialists that he received no response. Eslick v.

Davis, No. 3:21-CV-866, 2022 U.S. Dist. LEXIS 211460, at *3–5 (N.D. Ind. Nov. 21, 2022).

Mr. Lyons's record is distinct from that opinion. The parties in that case appear not to have raised how this sub-step is in tension with instructions for the first-level appeal — the discordant deadlines, unclear instruction on whether an appeal could continue without this step, explained earlier. Assuming that step was mandatory, Mr. Lyon has evidence he was misdirected, unlike the plaintiff in Eslick v. Davis. Mr. Lyons's evidence shows prison staff told him he simply had to wait for a response. Miami Correctional Facility didn't provide standard forms for this step, yet prison staff told him he had to use Department of Correction forms for all grievances and appeals. This record shows that this step was unavailable, either because the policy was too confusing to follow, or the steps were impossible in practice.

Finally, the defendants argue that their lack of records shows Mr. Lyons didn't exhaust administrative remedies. The argument amounts to saying the absence of evidence is conclusive evidence of absence. It doesn't account for the inability for anyone —plaintiff or prison staff — to track a grievance between when a prisoner gives a grievance to prison staff and a grievance specialist receives it. Nor does it account for the policy's blind eye toward non-responses and the impossible task of using the response to appeal a non-response. In the end, the lack of records is consistent with Mr. Lyons's version of events. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances

> that are actually inputted into the system by prison officials. In other
> words, even if a prisoner properly submits a grievance to an
> appropriate prison official, if the prison grievance specialist does not
> receive it, either because it is lost or forgotten, or if the grievance
> specialist fails for some other reason to input the grievance into the
> system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011). The defendants' evidence shows that Mr. Lyons's grievances about cell conditions didn't get logged, which fits with Mr. Lyons's evidence and the policy of logging grievances only once they're received.

In summary, the defendants' evidence is consistent with Mr. Lyons's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Lyons. Administrative remedies weren't available to Mr. Lyons, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Lyons's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Lyons's motion for summary judgment without a Pavey hearing.

Mr. Lyons requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Lyons's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT Mr. Lyons's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

_____ /s/ Robert L. Miller, Jr.
Judge, United States District Court

22